UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          Case No. 24-cr-105 (NEB/LIB)

        Plaintiff,

                                         **ORDER AND**
v.                                                 **REPORT AND RECOMMENDATION**

Alberto St. Martin Lopez, Jr. (3),
Terri Lee Wiedeman (4),

        Defendants.

Pursuant to a general assignment made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Defendants' various pretrial Motions. Pursuant to a request from the parties, the Court took the Defendants' present Motions under advisement upon the parties' written submissions.

For the reasons discussed herein, Defendant Wiedeman's Motion for Compliance with Federal Rule of Criminal Procedure 16, [Docket No. 73], is **GRANTED in part** and **DENIED in part**; Defendant Wiedeman's Motion to Disclose Evidence that is "Helpful" to the Defense, [Docket No. 76], is **GRANTED**; Defendant Lopez's Motion for Discovery and Inspection, [Docket No. 78], is **GRANTED in part** and **DENIED in part**; Defendant Lopez's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, [Docket No. 79], is **GRANTED**; Defendant Lopez's Motion for Disclosure of Rule 404(b) Evidence, [Docket No. 80], is **GRANTED**; Defendant Lopez's Motion to Disclose and Make Informant Available for Interview, [Docket No. 81], is **DENIED**; Defendant Lopez's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants, [Docket No. 82], is **DENIED**; Defendant Lopez's Motion for Early Disclosure of Jencks Act Materials, [Docket No. 83], is

**DENIED**; and Defendant Lopez's Motion to Sever Defendants, [Docket No. 84], is **DENIED without prejudice**.

Further, for reasons discussed herein, the Court recommends that Defendant Wiedeman's Motion to Suppress Evidence, [Docket No. 75], be **DENIED**; Defendant Wiedeman's Motion to Suppress Statements, [Docket No. 76], be **DENIED as moot**; and Defendant Lopez's Motion to Suppress Evidence, [Docket No. 85], be **DENIED**.

## I.    Background

Defendant Wiedeman and Defendant Lopez are each charged with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Indictment [Docket No. 17]). Defendant Wiedeman and Defendant Lopez have each entered a plea of not guilty as to the count arraigned against them in the Indictment. (Arraignment Minutes [Docket Nos. 51, 59]).

## II.    Defendant Wiedeman's Motion for Compliance with Federal Rule of Criminal Procedure 16, [Docket No. 73], and Defendant Lopez's Motion for Discovery and Inspection, [Docket No. 78].

Defendants[1] seek disclosure of any written, recorded, or oral statements made by Defendants or copies thereof in the possession, custody, or control of the Government, as well as, a copy of each respective Defendant's criminal history. (See Defs.' Mots. [Docket Nos. 73, 78]). Furthermore, Defendants request permission to inspect and/or copy books, papers, documents, photographs, and tangible objects in the possession, custody, or control of the Government and which are material to the preparation of the defense or are intended for use by the Government as evidence in chief at the trial, or were obtained from or belonged to each respective Defendant. Defendant also request permission to inspect and copy the results of any

---

[1] References to "Defendants" in the present Order and Report and Recommendation refer to Defendant Lopez and Defendant Wiedeman collectively unless otherwise noted.

physical or mental examinations or scientific tests or experiments, including the various electronic devices subjected to forensic testing in the present case. [2]

In its written response, the Government, acknowledging its obligation under Rule 16, asserts that it has complied and will continue to comply with its obligations under Rule 16.

Defendant Wiedeman's Motion for Compliance with Federal Rule of Criminal Procedure 16, [Docket No. 73], and Defendant Lopez's Motion for Discovery and Inspection, [Docket No. 78], are **GRANTED in part** and **DENIED in part**, as set forth herein. Any subsequently acquired materials or information which are specifically responsive to Rule 16, shall be disclosed to the Defense as soon as said responsive materials are discovered by the Government and in any event no later than fourteen (14) days before trial.

### III.    Defendant Wiedeman's Motion to Disclose Any Evidence That is "Helpful" to the Defense, [Docket No. 76], and Defendant Lopez's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, [Docket No. 79].

Defendants seek disclosure of evidence favorable to them respectively which would fall within the authority of Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972); and their progeny. (See Defs.' Mots. [Docket Nos. 76, 79]).

In its written response, the Government, acknowledging its duty to disclose responsive materials and information under Brady, Giglio, and their progeny, asserts that it has already made some disclosures of responsive materials and information under Brady, Giglio, and their

---

[2] Additionally, Defendants request written summaries of any expert opinion the Government intends to use in its case-in-chief. Defendants' request for an Order directing the Government to disclose a written summary of expert testimony it intends to use as evidence at trial is, however, moot. In compliance with Federal Rule of Criminal Procedure 16(a)(1)(G), the Court previously issued an Order, [Docket No. 60], requiring the parties to disclose the identity of any case-in-chief expert witness and make all such expert disclosures required by Federal Rule of Criminal Procedure 16 no later than twenty-eight (28) days before trial with the disclosure of any rebuttal experts thereto being required no later than ten (10) days before trial. Therefore, to the extent Defendants' Motions, [Docket Nos. 73, 78], seek an Order of this Court requiring the Government to disclose a written summary of expert testimony it intends to use under Rule 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial, Defendants' Motions, [Docket Nos. 73, 78], are **DENIED as moot**.

progeny. The Government generically objects to Defendants' Motions to the extent they hypothetically seek relief beyond the requirements of <u>Brady</u>, <u>Giglio</u>, and their progeny.

To the extent they seek materials responsive to <u>Brady</u>, <u>Giglio</u>, and their progeny, Defendant Wiedeman's Motion to Disclose Evidence That is "Helpful" to the Defense, [Docket No. 76], and Defendant Lopez's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, [Docket No. 79], are **GRANTED**, as set forth herein. The Government will disclose any and all remaining or subsequently discovered, obtained, or obtainable material responsive to <u>Brady</u> to the Defense as soon as said responsive materials are discovered by the Government.[3] The Government will disclose materials which are responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial by no later than seven (7) days before trial or when the presiding trial judge requires disclosure of trial witnesses, whichever is earlier.[4]

## IV.    Defendant Lopez's Motion for Disclosure of Rule 404(b) Evidence. [Docket No. 80].

Defendant Lopez seeks disclosure of any "bad act" or "similar course of conduct" evidence that the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b). (<u>See</u> Def.'s Motion for Disclosure of Rule 404(b) Evidence [Docket No. 80]). Defendant requests that such disclosures be made immediately. (<u>Id</u>.).

---

[3] In his Motion, Defendant Lopez purports to describe categories of information which he believes warrants disclosure under <u>Brady</u>, <u>Giglio</u>, and their progeny, and he ostensibly wishes the Court to order the disclosure of these materials pursuant to <u>Brady</u>, <u>Giglio</u>, and their progeny. However, in <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), the United States Supreme Court "emphasized the discretion of the *prosecutor*, not the trial judge, in deciding what evidence is producible under <u>Brady</u>." <u>United States v. Garrett</u>, 238 F.3d 293, 304 n.4 (5th Cir. 2000) (emphasis added); <u>see</u> <u>Lingle v. Iowa</u>, 195 F.3d 1023, 1026 (8th Cir. 1999). The Sixth Circuit has also explained that "while the <u>Brady</u> rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." <u>United States v. Clark</u>, 957 F.2d 248, 251 (6th Cir. 1992). That being said, "[i]f [the Government] fails to comply adequately with a discovery order requiring it to disclose <u>Brady</u> material, it acts at its own peril." <u>Id</u>. Accordingly, the Court encourages the Government to carefully evaluate the materials in its possession in light of a liberal understanding of its <u>Brady</u> obligations.

[4] The Government's disclosure of materials responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial shall include the criminal history, if any, for each trial witness.

In its written response, the Government, acknowledging its obligation to comply with Rule 404(b), requests that any Order on Defendant's present Motion be strictly tailored to the parameters of Rule 404(b). The Government suggests that such disclosures be made two weeks before trial.

In relevant part, Rule 404(b)(3) provides that the Government must "provide reasonable notice of any" Rule 404(b) "evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). In that notice, the Government must also "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).

Defendant Lopez's Motion for Disclosure of Rule 404(b) Evidence, [Docket No. 80], is **GRANTED**, as set forth herein. As soon as practicable and in no event later than twenty-one (21) days before trial, the Government shall disclose to Defendant Lopez formal notice of any specific 404(b) evidence it intends to offer, as well as, the purpose for which it intends to offer it into evidence at trial.[5]

## V.    Defendant Lopez's Motion to Disclose and Make Informants Available for Interview. [Docket No. 81].

Defendant Lopez requests an Order from the Court compelling the Government to disclose the identity of any informant utilized in the present case, to make any such informant available for interview, and to disclose the criminal history of any such informant. (Def. Mot. to Disclose and Make Informants Available for Interview [Docket No. 81]).

In its written response, the Government opposes Defendant Lopez's present Motion. (See Gov't's Consolidated Response to Defendants' Pretrial Mot. [Docket No. 91] at pp. 7–9). The

---

[5] Federal Rule of Evidence 404(b) does not extend to evidence of acts which are "intrinsic" to the charged offense. United States v. Adediran, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence); see United States v. Williams, 900 F.2d 823 (5th Cir. 1990).

Government argues that any confidential informant utilized in the present case is a mere tipster. In support of this argument, the Government asserts that no confidential informant in the present case is alleged to have participated in the charged offense, and the Government does not intend to call any informant "to prove" the charged offense.

The Government relies on the "Informer's Privilege" in support of its argument that it is allowed "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted). There are several exceptions to the privilege. Id. Of those, the one pertinent to the present case considers the "fundamental requirements of fairness" and a defendant's need to prepare an adequate defense. See Id. at 60–61 ("Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.").

"[T]here is no litmus test for determining when disclosure [of an informant's identity] is required[.]" United States v. Lapsley, 334 F.3d 762, 764 (8th Cir. 2003); see Roviaro, 353 at 62 ("We believe that no fixed rule with respect to disclosure is justifiable."). However, the Eighth Circuit has indicated a court ruling on a motion for disclosure of an informant's identity "must weigh the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." Lapsley, 334 F.3d at 763–64 (internal quotation marks and citations omitted).

In the case presently before the Court, that balance is best served by requiring the Government to disclose to Defendant Lopez the identity of only informants whose testimony the Government intends to introduce at trial in the present case or whose identity is otherwise discoverable under Brady, Giglio, and their progeny, or the Government's other discovery obligations. The Government will not be required, at this time, to disclose the identity of all

informants, including those informants who are mere tipsters, who are not alleged to have participated in the charged offense, and whose testimony the Government does not intend to introduce at the trial in the present case, unless the informant's identity is otherwise discoverable.

Therefore, Defendant Lopez's Motion to Disclose and Make Informant Available for Interview, [Docket No. 81], is **DENIED**. However, if the Government determines that it will use any confidential informants as witnesses at trial, the Government shall disclose the identity of those informants to Defendant Lopez no later than fourteen (14) days before trial. Moreover, the denial of this Motion does not alter the Government's obligation to disclose the identity of a confidential informant if such disclosure is required pursuant to one of the Government's other discovery obligations.

## VI. Defendant Lopez's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants. [Docket No. 82].

Defendant Lopez seeks an Order compelling the Government to disclose the post-conspiracy statements of all other co-defendants. (Def. Lopez's Mot. for Disclosure of Post Conspiracy Statements of Co-Defendants [Docket No. 82]). Defendant Lopez asserts that disclosure of the statements is necessary so that counsel can determine which statements of his co-defendants will be inadmissible at trial. (Id.).

Federal Rules of Criminal Procedure 16 is the primary avenue available to a criminal defendant seeking discovery. United States v. Siewert, No. 8-cr-4 (DWF/SRN), 2008 WL 3165852, at *2 (D. Minn. June 10, 2008) (citing 3D Federal Practice and Procedure Rule 16 Summary, at 206 (2008 ed.)). Generally, a criminal defendant has no constitutional right to discovery from the Government beyond the parameters of Rule 16. Siewert, 2008 WL 3165852, at *2.

Rule 16 of the Rules of Criminal Procedure, in relevant part, provides that "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A).

As relevant to the Defendant's present Motion, the Rules of Evidence provide that a "statement [that] is offered against an opposing party and" which "was made by the party's coconspirator during and in furtherance of the conspiracy" is "not hearsay." Fed. R. Evid. 801(d)(2)(E). Such statements may be admitted against a defendant, and they may be attributed to said defendant. See United States v. Bell, 573 F.2d 1040, 1043–46 (8th Cir. 1978); United States v. Hayes, 391 F.3d 958, 962 (8th Cir. 2004).

As noted above, Defendant's present Motion seeks all post-conspiracy statements made by any co-defendant regardless of whether said co-defendant will testify at trial. (See Def.'s Mot. [Docket No. 82]). Defendant seeks immediate disclosure of said statements.

Rule 16 does not require the Government's pretrial disclosure of all statements of co-defendants. See, e.g., United States v. Hoelscher, 914 F.2d 1527, 1535 (8th Cir. 1990); United States v. Manthei, 979 F.2d 124, 126 (8th Cir. 1992); United States v. Vitale, 728 F.2d 1090, 1093–94 (8th Cir. 1984); United States v. Childs-Young, No. 22-cr-76 (KMM/TNL), 2023 WL 416427, at *5 (D. Minn. Jan. 26, 2023); United States v. Hitchcock, No. 22-cr-180 (JNE/TNL), 2023 WL 180081, at *4 (D. Minn. Jan. 13, 2023). "Rule 16 stresses that only statements made by the defendant are discoverable.'" United States v. Jalloh, No. 23-cr-75 (SRN/TNL), 2023 WL 4145828, at *5 (D. Minn. June 23, 2023) (cleaned up); see, e.g., United States v. Dornsbach, No. 22-cr-48, 2023 WL 2666480, at *4 (D. Minn. Mar. 28, 2023) (collecting cases). Under the circumstances of the present case, neither Rule 16 nor any other rule of discovery in a criminal

case provides for the immediate disclosure by the Government of all post-conspiracy statements of all co-defendants. United States v. Collins, 652 F.2d 735, 738 (8th Cir. 1981); Childs-Young, 2023 WL 416427, at *5; Hitchcock, 2023 WL 180081, at *4.

To the extent Defendant Lopez contends that Rule 16 provides generally for such disclosure, this Court finds this argument unpersuasive. As the Eighth Circuit Court of Appeals has explained, Rule 16 "covers oral statements made by defendant 'in response to interrogation by any person then known to the defendant to be a government agent.'" United States v. Hoelscher, 914 F.2d 1527, 1535 (8th Cir. 1990) (citing United States v. Vitale, 728 F.2d 1090, 1093–94 (8th Cir. 1984)). Rule 16 does not apply "to an oral statement by a conspirator in the course of the conspiracy." Hoelscher, 914 F.2d at 1535. Neither does Rule 16 apply to all of the post-conspiracy statements of a defendant's co-defendants. Collins, 652 F.2d at 738; Childs-Young, 2023 WL 416427, at *5; Hitchcock, 2023 WL 180081, at *4.

Defendant Lopez contends that the post-conspiracy statements of his co-defendants are discoverable under Rule 16 because the statements are "documents in the possession of the government that are material to [his] defense." (Def. Lopez's Mot. [Docket No. 82] at 1). Defendant Lopez does not cite to any authority which has interpreted post-conspiracy statements by a co-defendant as "documents" discoverable under Rule 16. (Id.). Instead, the relevant caselaw indicates that statements are not treated as documents under Rule 16 even when said statement has been reduced to a written format. See, e.g., United States v. Collins, 652 F.2d 735, 738 (8th Cir. 1981) (discussing the handwritten post-conspiracy statement of an alleged co-conspirator and co-defendant).

Therefore, for the reasons discussed above, Defendant Lopez's Motion for Disclosure of Post-Conspirator Statements of Co-Defendants, [Docket No. 82], is **DENIED**. The Court notes, however, that to the extent any post-conspiracy statement of a co-defendant is subject to the

Government's other separate discovery obligations, the Government must disclose said statement in accordance with those discrete discovery obligations.

## VII. Defendant Lopez's Motion for Early Disclosure of Jencks Act Materials. [Docket No. 83].

Defendant Lopez moves the Court for an Order requiring the Government to disclose Jencks Act materials before trial. (See Def. Lopez's Mot. [Docket No. 83]).

The Government objects to Defendant's request arguing that it cannot be <u>required</u> to make pretrial disclosure of Jencks Act materials.

The Court recognizes the practical effect that disclosing Jencks Act materials only after a witness has actually testified in the Government's case-in-chief creates the prospect for unnecessary continuances and delays in the trial while the Defense is permitted a reasonable time to review the late disclosures. However, Defendant Lopez provides no citation to authority which would allow the Court to <u>require</u> early disclosure of Jencks Act material. Generally, the case law provides that the Court may not require the Government to make early disclosure of Jencks Act material. <u>See, e.g.</u>, <u>United States v. Alexander</u>, 736 F. Supp. 968, 981 (D. Minn. 1990); <u>United States v. White</u>, 750 F.2d 726, 727 (8th Cir. 1984); <u>United States v. Wilson</u>, 102 F.3d 968, 971–72 (8th Cir. 1996).

Accordingly, Defendant Lopez's Motion for Early Disclosure of Jencks Act Materials, [Docket No. 83], is **DENIED**.[6]

## VIII. Defendant Lopez's Motion to Sever Defendants. [Docket No. 84].

Defendant Lopez moves to sever his case from that of his co-defendants pursuant to Federal Rule of Criminal Procedure 14. (Def. Lopez's Mot. to Sever Defendants [Docket No. 84]). In support of this request, Defendant Lopez asserts that it will be difficult for the jury to

---

[6] Nevertheless, the Government voluntarily agreed to provide all Jencks Act materials to the Defense by no later than two (2) weeks before trial. (Gov't's Resp. [Docket No. 91] at 12). The Court encourages such voluntarily agreements.

distinguish the alleged acts of the co-defendants from Mr. Lopez and that evidence "may" be introduced which would be admissible against a co-defendant but inadmissible as to Defendant Lopez. (See Id.).

Federal Rule of Criminal Procedure 8(b) provides:

The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Federal Rule of Criminal Procedure 14(a), however, provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

Although there do exists circumstances in which it is appropriate to order separate trials for each defendant,

[t]here is a preference in the federal system for joint trials of defendants who are indicted together. This preference is especially compelling when the defendants are charged as coconspirators. It is well settled in this circuit that a motion for relief from an allegedly prejudicial joinder of charges or defendants raises a question that is addressed to the judicial discretion of the trial court . . . .

United States v. Benton, 890 F.3d 697, 713–14 (8th Cir. 2018) (internal quotations omitted). Consequently,

if joinder is proper under Rule 8, a defendant seeking severance has the heavy burden of demonstrating that a joint trial will impermissibly infringe his right to a fair trial. United States v. Warfield, 97 F.3d 1014, 1019 (8th Cir. 1996). It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. Zafiro v. United States, 506 U.S. 534, 540 (1993) (citations omitted). . . .

A defendant seeking to sever his trial must therefore show that a joint trial would cause real prejudice. United States v. Mickelson, 378 F.3d 810, 817–18 (8th Cir. 2004). Real prejudice exists when (a) [a defendant's] defense is irreconcilable

with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants.

United States v. McConnell, No. 13-cr-273 (SRN/FLN), 2017 WL 111304, *3 (D. Minn. Jan. 11, 2017) (internal quotations omitted).

For example, in Bruton v. United States, 391 U.S. 123, 124 (1968), the petitioner and a co-defendant had been convicted of armed robbery in a joint trial after a postal inspector testified that Bruton's co-defendant had given a confession which had "expressly implicat[ed]" the petitioner. Id. at 124 n.1. The trial court instructed the jury that the co-defendant's confession "if used, can only be used against the [co-defendant]. It is hearsay insofar as the [petitioner] is concerned, and you are not to consider it in any respect to the [petitioner], because insofar as he is concerned it is hearsay." Id. at 125 n. 2. The Supreme Court, however, concluded that:

> [T]he introduction of [the co-defendant's] confession posed a substantial threat to the petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard [the co-defendant's] inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.

Id. at 137. For that reason, the Supreme Court reversed the petitioner's conviction in Bruton. Id. at 126, 137.

In reaching its conclusion, however, even the Bruton Court suggested that redaction of a co-conspirator testimony may be sufficient to cure any prejudice caused by the introduction of a co-defendant's incriminating statement, and the Court acknowledged that "[n]ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions." Id. at 134 n. 10, 135. In Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court further distinguished between co-defendant statements that are "facially incriminating," and statements which merely are "incriminating by connection." Id. at

209. When a co-defendant's statement is facially incriminating of the defendant, redaction or even severance may be required because it is more difficult for jurors to set aside such evidence. Id. at 208. But the Court rejected—as both impractical and unnecessary—the suggestion that the rule in Bruton extended to confessions that are incriminating merely by connection. Id. at 208–09.

In the present case, Defendant Lopez only generally asserts that that it will be difficult for the jury to separate him and his actions from the actions of his co-defendants and that there "may" be evidence introduced which is not admissible against him. (Def. Lopez's Mot. [Docket No. 84]). Defendant Lopez's assertions, however, are based solely on speculation at this point because Defendant Lopez does not know what evidence will be introduced at trial or even which defendants will proceed to trial.

A motion for severance of defendants cannot be based solely on speculation as to only the potential for introduction of prejudicial evidence because the Court cannot determine the actual prejudice that may exist until it is aware of the actual evidence which will be presented. In the present case, the Government has yet to determine which evidence it will use at trial; thus, at this time, the Court cannot determine whether the potential prejudicial rises to a level warranting severance.

Moreover, Defendant Lopez has failed to make any argument as to why a limiting jury instruction could not address his concern regarding any statement of his co-defendants. Nor has Defendant Lopez specifically addressed why targeted redaction of any such statement could not address his concerns. On the record currently before the Court, it is not apparent that a jury would be unable to appropriately compartmentalize the evidence before it, especially when presented with redacted evidence and with the assistance of limiting jury instructions.

As articulated above, there is a strong preference in the federal system for joint trials. In light of that preference, and at this juncture, where Defendant Lopez can only invite the Court to speculate as to what evidence the Government might actually seek to introduce at a joint trial or how said evidence may not be suitably redacted, severance is not appropriate. "Severance is a remedy that can be provided at the time of trial if appropriate under the circumstances." United States v. Rios-Quintero, No. 16-cv-161(1) (MJD/LIB), 2016 WL 6134545, *13 (D. Minn. Sept. 9, 2016) (quoting United States v. Billups, 442 F. Supp. 2d 697, 706 (D. Minn. 2006)); United States v. Farah, No. 22-cr-124 (NEB/TNL), 2023 WL 8757097, at *19 (D. Minn. Dec. 19, 2023). If circumstances change at the time of trial, Defendant Lopez is free to seek redaction of any prejudicial evidence or renew his motion to sever before the trial judge at that time. See Billups, 442 F. Supp. 2d at 706.

For the reasons articulated above, Defendant Lopez's Motion to Sever Defendants, [Docket No. 84], is **DENIED without prejudice**.

## IX. Defendant's Wiedeman's Motion to Suppress Statements. [Docket No. 75].

Defendant Wiedeman filed a pretrial Motion seeking to suppress all statements she made to law enforcement at the time of the execution of a search warrant on her residence. (Def. Wiedeman's Mot. [Docket No. 75]). Defendant Wiedeman asserts that said statements were obtained by law enforcement in violation of her constitutional rights. (See Id.).

In its written response to Defendant Wiedeman's pretrial motions, the Government agreed not to use any of Defendant Wiedeman's statements against her in its case-in-chief. (Gov't's Resp. [Docket No. 91] at 15 n.5). In the parties' "Joint Motion to Strike Hearing and Stipulation Regarding Suppression Motions," [Docket No. 95], the Government again agreed not to use, in its case-in-chief, any of the statements with which Defendant Wiedeman took issue in

her Motion to Suppress Statements, [Docket No. 75]. (See Joint Motion to Strike Hearing and Stipulation Regarding Suppression Motions [Docket No. 95] at 2 n.2).

The Government's agreement to self-suppress all statement Defendant Wiedeman made to law enforcement at the time of the execution of a search warrant on her residence renders moot Defendant Wiedeman's request to suppress that same evidence. See, e.g., United States v. Hollman, No. 23-cr-290 (JWB/TNL), 2024 WL 913220, at *1 (D. Minn. Mar. 4, 2024); United States v. Beck, No. 19-cr-184 (MHC/JSA), 2020 WL 6112187, at *3 (N.D. Ga. Oct. 16, 2020), aff'd, (11th Cir. Aug. 7, 2023); United States v. Armstead, No. 11-cr-143, 2011 WL 6204598, at *2 (N.D. Iowa Dec. 13, 2011), report and recommendation adopted, 2011 WL 6842511 (N.D. Iowa Dec. 29, 2011).

Therefore, the undersigned recommends that Defendant Wiedeman's Motion to Suppress Statements, [Docket No. 75], be **DENIED as moot**.

**X.    Defendants' Motions to Suppress Evidence. [Docket Nos. 74, 85].**

Defendants each move to suppress evidence resulting from the execution of separate search warrants. Defendant Wiedeman moves to suppress all evidence resulting from the search of her residence and vehicle pursuant to search warrant. (Def. Wiedeman's Mot. to Supp. [Docket No. 74]). Defendant Lopez moves to suppress all evidence resulting from the search of his cell phone pursuant to a search warrant. (Def. Lopez's Mot. to Suppress [Docket No. 85]). Defendants each argue that the respective search warrant is not supported by probable cause, and they ask this Court to conduct a four corners review of the search warrants.

**A.  Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted); see United States v. Alexander, 574 F.3d 484, 489 (8th Cir. 2009); United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008). To establish such a fair probability, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). "Factors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" United States v. Johnson, 848 F.3d 872, 878 (8th Cir. 2017) (quoting United States v. Colbert, 828 F.3d 718, 726 (8th Cir. 2016)).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted); United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). Moreover, it is well-settled that "[p]robable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Thus, in reviewing a warrant application, the judicial officer is entitled to rely on the reasonable inferences of the affiant and the judicial officer is also entitled

to make their own reasonable inferences drawn from the totality of the circumstances. <u>See</u> <u>United States v. Brackett</u>, 846 F.3d 987, 992 (8th Cir. 2017) (quoting <u>United States v. Thompson</u>, 210 F.3d 855, 860 (8th Cir. 2000)); <u>see also</u> <u>United States v. Hager</u>, 710 F.3d 830, 836 (8th Cir. 2013) (noting that courts use a "totality of the circumstances test . . . to determine whether probable cause exists"); <u>United States v. Wells</u>, 347 F.3d 280, 287 (8th Cir. 2003).

"In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" <u>United States v. Smith</u>, 581 F.3d 692, 694 (8th Cir. 2009) (quoting <u>United States v. Reivich</u>, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" <u>United States v. Wiley</u>, No. 9-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (alterations in <u>Wiley</u>) (quoting <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005)).

In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). It is "the duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." <u>Id.</u> at 238–39 (alteration in <u>Gates</u>) (quoting <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)).

**B. Facts**[7]

On October 26, 2023, Detective Adam Torgerson with the Moorehead Police Department executed a search warrant[8] at the residence of Jamie Richard White, a co-defendant in this case.

---

[7] The facts contained in this section are derived from the exhibits submitted by the parties and admitted for the purposes of ruling on Defendants' Motions to Suppress Evidence. (<u>See</u> Order [Docket No. 96]) (granting the parties' Joint Motion to Strike Hearing and Stipulation Regarding Suppression Motions).

[8] The October 2023, Search Warrant is not at issue in the present Order and Report and Recommendation.

(Residence Search Warrant [Docket No. 91-1] at 2).[9] The October 2023, Search Warrant was obtained during the course of an investigation into an alleged kidnapping. (Id.). Law enforcement believed that Defendant White had restrained an adult female in his basement because he believed the adult female had stolen methamphetamine from him. (Id. at 2–3).

As a result of the October 2023, Search Warrant, law enforcement seized several items, including various substances believed to be narcotics, ammunition, drug related paraphernalia, and cell phones. (Id.).[10] During the examination of the seized cell phones, Detective Torgerson discovered that Defendant White was in contact with individuals who were involved with the distribution of narcotics, and these individuals were shipping parcels of narcotics to Defendant White using addresses in the Fargo and Moorehead area. (Id.). Detective Torgerson also observed information in the cell phones which he believed made apparent that Defendant White was in contact with Defendant Wiedeman who worked at a property management company. (Id.).[11] The information in the cell phones also demonstrated that Defendant Wiedeman had been providing Defendant White with addresses of vacant rental properties in the Fargo and Moorehead area for Defendant White to use these addresses to accept packages in the mail containing narcotics. (Id.).

On February 5, 2024, law enforcement agents spoke with a cooperating criminal defendant ("CCD 1") in an unrelated case who wished to provide law enforcement with information in the hope of receiving consideration on criminal charges then pending against CCD 1. (Id. at 3–4). CCD 1 informed law enforcement that Defendant White had been delivering approximately half a pound of narcotics every two weeks to an individual in Sisseton, South

---

[9] Although Defendant White is a co-defendant in this case, he does not have any pending pretrial motions which need to be addressed in the present Order and Report and Recommendation.

[10] Defendant White was arrested the same day as the October 2023, Search Warrant was executed, but he was later released on bond. (Id. at 2–3).

[11] Detective Torgerson was familiar with Defendant Wiedeman based on Defendant Wiedeman's prior convictions "for her involvement in methamphetamine-related investigations." (Id.).

Dakota. (Id.). CCD 1 further informed law enforcement that Defendant White was receiving the narcotics from his girlfriend and storing the narcotics in his bedroom. (Id.).

On February 22, 2024, Deputy Sheriff Geoffrey Bakken ("Deputy Bakken") with the Clay County Sheriff's Department applied for and received a search warrant authorizing law enforcement to search a suspicious package ("Subject Package") in the custody of the United States Postal Service after a positive K-9 altered to the presence of the odor of a controlled substance. (Id.).[12] The package was addressed to a specific address in Moorehead, Minnesota ("Delivery Address"). (Id.). The search of the Subject Package revealed it to contain two vacuum sealed plastic containers containing a white crystalline substance. (Id.).

After searching the Subject Package, law enforcement determined that the Delivery Address was a vacant rental property associated with "IRT Holdings." (Id.). Law enforcement also learned that "IRT Holdings" was doing business as Personal Touch Property Management. (Id. at 4–5). Detective Torgerson knew from observing Personal Touch Property Management's Facebook page that Defendant Wiedeman had been employed at Personal Touch Property Management from approximately one year. (Id.). Detective Torgerson knew, based on his previous examination of White's cell phones, that Defendant Wiedeman was providing Defendant White with addresses to vacant rental homes managed by Personal Touch Property Management in the Fargo and Moorehead area for Defendant White to use as delivery addresses for packages containing narcotics. (Id.).

On February 22, 2024, law enforcement began conducting physical surveillance of the residence located at the Delivery Address and Defendant White's residence. (Id.). During this surveillance, law enforcement observed a blue Ford F-150 pickup truck at Defendant White's residence, and law enforcement observed a similarly looking blue Ford F-150 twice driving by

---

[12] This search warrant is not at issue in the present action.

the Delivery Address. (Id.). During this same surveillance law enforcement officers observed a blue Chevrolet Silverado parked at Defendant White's residence; the Chevrolet Silverado was registered to Defendant Lopez. (Id.). After leaving Defendant White's residence, the Chevrolet Silverado drove directly to the Delivery Address and slowly drove past the Delivery Address before proceeding to Defendant Lopez's residence. (Id.).

On February 23, 2024, the United States Postal Inspection Service conducted a controlled delivery of the Subject Package, with the addition of a global positioning system ("GPS") device, to the Delivery Address. (Id. at 5–6). When there was no answer at the door of the Delivery Address, the Subject Package was left on the front porch of the residence. (Id.). A short time later the above-mentioned Chevrolet Silverado drove past the Delivery Address, "circled back," and pulled into the driveway of the Delivery Address. (Id.). After pulling into the driveway, Defendant Lopez exited the Chevrolet Silverado, picked up the package, and reentered the vehicle before driving to his residence. (Id.). Upon arriving at his residence, Defendant Lopez exited his vehicle with the Subject Package and walked into his residence. (Id.).

Law enforcement then began to conduct surveillance of Defendant Lopez's residence. (Id.). Some time later, a white Kia Optima, which one of the officers recognized as having previously been at Defendant White's residence, arrived at Defendant Lopez's residence. (Id.). Two female individuals exited the vehicle before entering Defendant Lopez's residence. (Id.). After the two individuals entered Defendant Lopez's residence, law enforcement received notice that GPS device in the Subject Package had reported movement. (Id.).

Defendant Lopez then exited the residence, and he drove away in the Chevrolet Silverado. (Id.). After driving a "few blocks" from his residence, Defendant Lopez was stopped by law enforcement and detained. (Id.). He was found to be in possession of the GPS device which had been installed in the Subject Package. (Id.). Defendant Lopez informed law

enforcement that after he and the two female individuals opened the Subject Package, he took possession of the GPS device, and the two female individuals took possession of the package contained in the Subject Package. (Id.). Defendant Lopez further informed law enforcement that co-defendant Elizabeth Lynne Brinkmann[13] had contacted him and told him to go pick up the Subject Package. (Id.).

During this time, law enforcement observed the two females exit Defendant Lopez's residence. (Id.). One individual left in the white Kia Optima, and the other individual began walking away from the residence. (Id.). Law enforcement then stopped the Kia Optima and detained the driver who was identified as Defendant Brinkman, who law enforcement knew to be in a relationship with Defendant White. (Id.).

A short time later, the above-mentioned blue Ford F-150, driven by Defendant White, arrived at Defendant Lopez's residence and picked up the female individual who had left the residence on foot. (Id.). Law enforcement followed the blue Ford F-150 when it left Defendant Lopez's residence. (Id.). After following the vehicle, law enforcement stopped the blue Ford F-150. (Id.).  Defendant White and the female passenger, later identified as Kayla Jo Schaffer, were searched and detained. (Id.). The search of Schaffer revealed the bag of suspected methamphetamine which had been inside the Subject Package. (Id.). The subsequent search of the Kia Optima resulted in the discovery of a "large amount" of suspected methamphetamine. (Id.).

Also on February 23, 2024, law enforcement officers executed a search warrant[14] on Defendant Lopez's residence. (Cell Phone Search Warrant [Docket No. 91-2] at 8). As a result of that search, law enforcement seized a black Samsung cell phone ("Subject Phone") and the

---

[13] Although Defendant Brinkman is a co-defendant in this case, she does not have any pending pretrial motions which need to be addressed in the present Order and Report and Recommendation.
[14] The search warrant authorizing the search of Defendant Lopez's residence is not challenged in the present case.

postal box from the Subject Package. (Id.). Defendant Lopez provided the law enforcement officers with the passcode to unlock the black Samsung cell phone. (Id.).

That same day, Defendant White, Defendant Brinkman, Schaffer, and Defendant Lopez were arrested. (Residence Search Warrant [Docket No. 91-1] at 7). They were then transported to the Clay County Jail. (Id.).

On February 26, 2024, Deputy Bakken reviewed phone calls made on recorded lines from the Clay County Jail. (Id.). Deputy Bakken reviewed phone calls and text message between Defendant White and a telephone number Deputy Bakken knew belonged to Defendant Wiedeman. (Id.). In these communications, Defendant White told Defendant Wiedeman that Defendant White was 'going to take the blame for the recent charges," and Defendant Wiedeman told Defendant White that she had been talking with Defendant Brinkman during the previous month. (Id.). Defendant White also instructed Defendant Wiedeman to send a text message to Defendant Brinkmann at the Clay County Jail. (Id.). Defendant Wiedeman subsequently sent text messages to Defendant Brinkmann as instructed. (Id.).

On February 27, 2024, Deputy Bakken submitted an application for a state court search warrant seeking a search warrant authorizing law enforcement to search Defendant Wiedeman's person; her residence in Moorehead, Minnesota; and her vehicle, a white 2016 Ford Edge. (See Id.). In his affidavit in support of the application for the February 27, 2024, search warrant, Deputy Bakken provided the details of law enforcement's investigation, including all the facts provided above except for the details regarding the results of the search of Defendant Lopez's residence. (Id.).

Deputy Bakken also included additional information in his affidavit. (Id. at 7–12). Deputy Bakken attested that, based on his training and experience, individuals keep notes, ledgers, and records, in their residence, on their person, and in their vehicle, and that he

specifically believed Defendant Wiedeman may have records relating to Personal Touch Property Management and her communications with Defendant White in her residence, on her person, and in her vehicle. (Id.). Deputy Bakken further attested that, based on his training and experience, it is common for persons involved in the distribution of narcotics to keep narcotics, as well as, the receipts, ledgers, notes, computer files, and other indicia related to the distribution of narcotics in the individual's residence, on the individual's person, and in the individual's vehicle where the items will be readily accessible. (Id.).

The Honorable Jade M. Rosenfeldt, District Court Judge for the State of Minnesota, Seventh Judicial District, County of Clay, determined that probable cause existed to support the issuance of the February 27, 2024, Search Warrant. (Id. at 19). The February 27, 2024, Search Warrant authorized law enforcement officers to search Defendant Wiedeman's person; her residence; and her vehicle, identified as a white 2016 Ford Edge. (See Id. at 17).

Thereafter, law enforcement officers, including Deputy Bakken, went to Defendant Wiedeman's residence to execute the February 27, 2024, Search Warrant. (Cell Phone Search Warrant [Docket No. 91-2] at 8). Upon arriving at the residence, law enforcement officers knocked on the door and announced their presence, but there was no answer. (Cell Phone Search Warrant [Docket No. 91-2]). After forcing open the door and entering the residence, the officers located and detained Defendant Wiedeman and another individual, later identified as Kevin Joseph Bruan. (Id.).[15] As a result of the execution of the February 27, 2024, Search Warrant, law enforcement officers seized four cell phones, two bags of a crystalline substance, two micro-SD cards, a Blue Bell Bank folder with Defendant White's paperwork contained therein, a bail bond

---

[15] After entering the residence, law enforcement officers observed that the bathroom next to Defendant Wiedeman's bedroom had the sink faucet running and that there was a glass mirror in the sink under the running water. (Id. at 9). The residue found on the mirror field tested positive for methamphetamine. (Id.). Law enforcement officers believed these observations to indicate that Defendant Wiedeman was attempting to dispose of evidence while the officers were making entry into the residence. (Id.).

application for Defendant White, and a glass mirror with white residue which field tested positive for methamphetamine. (Id.; Residence Search Warrant [Docket No. 91-1]).

On March 1, 2024, Detective Torgerson submitted an application for a state court search warrant seeking a search warrant authorizing law enforcement to search the contents of Defendant Lopez's black Samsung cell phone which was recovered during the search of Defendant Lopez's residence. (Cell Phone Search Warrant [Docket No. 91-2] at 1, 15). In his affidavit in support of this search warrant, Detective Torgerson provided the details of law enforcement's investigation, including all the facts provided above. (Id. at 2–14).

Detective Torgerson also provided additional information in his affidavit. (Id. at 6–14). Detective Torgerson attested that during the aforementioned stop of the blue Ford F-150 in which Kayla Jo Schaffer was a passenger law enforcement observed that Schaffer appeared to be using her cell phone as the officer's approached the vehicle and that during the above-described stop of the white Kia Optima law enforcement observed that Defendant Brinkmann's cell phone had an incoming call from "Kayla" at the time she was detained. (Id. at 6–7). Detective Torgerson further attested that "[i]t is apparent there is a conspiracy amongst multiple people relating to the distribution of methamphetamine," including Defendant White, Defendant Brinkmann, Defendant Lopez, Defendant Wiedeman, and Schaffer. (Id. at 10). Detective Torgerson also attested that, based on his training and experience, it is common for persons involved in the distribution of controlled substances to use cellular phones to communicate and store information regarding the distribution of controlled substances. (Id. at 10–14).

On March 4, 2024, Judge Rosenfeldt determined that probable cause existed to support the issuance of the search warrant requested by Detective Torgerson ("Cell Phone Search Warrant"). (Id. at 17). The Cell Phone Search Warrant authorized law enforcement officers to

search the contents of the black Samsung cell phone recovered from Defendant Lopez's residence. (Id. at 16).

**C. Discussion**

As observed above, Defendant Wiedeman moves to suppress all evidence resulting from the search of her residence and vehicle pursuant to the February 27, 2024, Search Warrant. (Def. Wiedeman's Mot. to Supp. [Docket No. 74]).[16] Defendant Lopez moves to suppress all evidence resulting from the search of his cell phone pursuant to the Cell Phone Search Warrant. (Def. Lopez's Mot. to Suppress [Docket No. 85]). Defendants each argue that the respective search warrant is not supported by probable cause, and they ask this Court to conduct a four corners review of the search warrants.

**1. Defendant Wiedeman's Motion to Suppress Evidence. [Docket No. 74].**

As observed above, Defendant Wiedeman argues that Deputy Bakken's affidavit submitted in support of the application for the February 27, 2024, Search Warrant lacked a reasonable basis upon which to find that probable cause existed to support the issuance of the February 27, 2024, Search Warrant. (Def. Wiedeman's Mot. [Docket No. 74]). Specifically, Defendant Wiedeman argues that the affidavit lacked a basis upon which to find probable cause because the affidavit fails to establish the requisite nexus between the places to be searched (her residence and vehicle) and the evidence sought. (Id.).

Considering the affidavit submitted in support of the February 27, 2024, Search Warrant authorizing law enforcement to search Defendant Wiedeman's residence and vehicle, Judge Rosenfeldt could reasonably have concluded that there was a fair probability that evidence of a crime would be found in Defendant Wiedeman's residence and vehicle. Put differently, the Court

---

[16] Although the February 27, 2024, Search Warrant authorized the search of Defendant Wiedeman's person, residence, and vehicle, Defendant Wiedeman's challenge to the February 27, 2024, Search Warrant involves only the search of her residence and her vehicle. (See Def. Wiedeman's Mot. [Docket No. 74]). Defendant Wiedeman does not challenge the search of her person. (See Id.).

concludes that Judge Rosenfeldt had a sufficient basis upon which to believe that probable cause existed to support the issuance of the February 27, 2024, Search Warrant authorizing law enforcement to search Defendant Wiedeman's residence and vehicle.

Specifically, the Court notes that, in his affidavit, Deputy Bakken provided the details of law enforcement's investigation of the distribution of methamphetamine which involved Defendant Wiedeman. The affidavit noted that after the search of Defendant White's residence revealed, among other things, controlled substances and a cell phone, law enforcement's review of Defendant White's cell phone revealed that he had been in contact with Defendant Wiedeman who was providing him with addresses for vacant rental properties which he could utilize for the delivery of controlled substances.[17] The weight of this assertion in the affidavit is bolstered by other information in the affidavit, including the fact that a package containing suspected methamphetamine was mailed to a vacant rental property managed by the property management company at which Defendant Wiedeman was employed. Furthermore, the affidavit detailed Defendant White and Defendant Lopez's involvement in retrieving the Subject Package after it was delivered. The affidavit also noted that while Defendant White was detained in the Clay County Jail, he told Defendant Wiedeman that he was going to "take the blame for the recent charges." Deputy Bakken's assertions in his affidavit provide a sufficient basis upon which Judge Rosenfeldt could reasonably conclude that Defendant Wiedeman was involved in the distribution of controlled substances.

Deputy Bakken's affidavit also provides a sufficient nexus between the evidence sought and the places to be searched, i.e., Defendant Wiedeman's residence and vehicle. Deputy Bakken specifically noted that, based on his training and experience, individuals involved in the

---

[17] In addition to the controlled substances discovered in his residence, the affidavit also noted that law enforcement had received information from CCD 1 regarding Defendant White's distribution of controlled substances.

distribution of controlled substances often keep contraband, proceeds, and evidence of their involvement in the distribution of controlled substances in their residences and vehicles. Deputy Bakken's attestation here provides a sufficient basis upon which to demonstrate a nexus between the evidence sought and the places to be searched, i.e., Defendant Wiedeman's residence and vehicle. See, e.g., United States v. Tellez, 217 F.3d 547, 549 (8th Cir. 2000) (observing that when "there was evidence that [defendant] was engaged in a continuing course of criminal activity," such as the distribution of controlled substances, "it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing in his home" even when there is no "actual knowledge" of controlled substances being present in the defendant's home); United States v. Williams, 737 F.2d 735, 738 (8th Cir. 1984) (describing a defendant's resident and automobile as "two logical places to look for methamphetamine"); United States v. Jones, 74 F.4th 941, 949 (8th Cir. 2023), cert. denied, 144 S. Ct. 862 (2024); United States v. Keele, 589 F.3d 940, 944 (8th Cir. 2009); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Neadeau, No. 20-cr-224 (WMW/LIB), 2021 WL 4046393, at *4 (D. Minn. June 22, 2021) (collecting cases), report and recommendation adopted, 2021 WL 3674496 (D. Minn. Aug. 19, 2021); United States v. Taylor, No. 15-cr-91 (JNE/LIB), 2015 WL 4992443, at *8 (D. Minn. Aug. 20, 2015) ("Indeed, there have been several cases in which the Eighth Circuit has upheld a finding that there was sufficient probable cause to search a defendant's home even though the only direct evidence of a suspect's narcotics trafficking was discovered elsewhere.") (citing Tellez, 217 F.3d at 550).

In summary, the Court finds that Deputy Bakken's affidavit submitted in support of the application for the February 27, 2024, Search Warrant provided a sufficient basis upon which Judge Rosenfeldt could reasonably have determined that Defendant Wiedeman was involved in the ongoing distribution of a controlled substance. This determination, combined with Deputy

Bakken's statements that it is common for persons involved in the distribution of controlled substances to keep evidence of such distribution at their residence and in their vehicle, is sufficient to support a commonsense inference that there was a fair probability that evidence of a crime would be found in the search of the Defendant Wiedeman's residence and vehicle.

In addition, assuming solely for the sake of argument that the Court were to determine that the affidavit of Deputy Bakken was insufficient to establish probable cause, the Court concludes that officers relied in good faith on the probable cause determination by Judge Rosenfeldt when executing the February 27, 2024, Search Warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238–39 (2011) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

United States v. Marion, 238 F.3d 965, 969 (2001).

The consideration of these circumstances as applied to the present case demonstrates that law enforcement's good-faith reliance on the February 27, 2024, Search Warrant issued by Judge Rosenfeldt militates against suppressing the evidence obtained during the execution of the February 27, 2024, Search Warrant. For all the reasons discussed above, Deputy Bakken's affidavit in support of the February 27, 2024, Search Warrant was not "so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable." Similarly, the February 27, 2024, Search Warrant was not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Lastly, there is no indication on the record now before the Court that Judge Rosenfeldt was misled by any statement within Deputy Bakken's affidavit nor any indication that Judge Rosenfeldt wholly abandoned her judicial role in issuing the February 27, 2024, Search Warrant.

Thus, the Court concludes that the officers involved relied in good faith on the February 27, 2024, Search Warrant which had been issued by Judge Rosenfeldt.

Therefore, the undersigned recommends that Defendant Wiedeman's Motion to Suppress Evidence, [Docket No. 74], be **DENIED**.

### 2. Defendant Lopez's Motion to Suppress Evidence. [Docket No. 85].

As observed above, Defendant Lopez seeks an Order of this Court suppressing all evidence resulting from the search of the contents of his black Samsung cell phone ("Subject Phone") which was searched pursuant to the Cell Phone Search Warrant issued by Judge Rosenfeldt. (Def. Lopez's Mot. [Docket No. 85]). Defendant Lopez's sole argument in support of suppression is that the affidavit submitted in support of the application for the Cell Phone Search Warrant did not establish the requisite nexus between the alleged illegal activity and the place to be search "because it did not affirmatively state how the affiant formed his belief that evidence of narcotics sales and possession or other crimes would be found on Mr. Lopez's cell phone." (Id. at 2).

The Court finds Defendant Lopez's argument here to be unpersuasive. An affidavit submitted in support of an application for a search warrant need not "affirmatively" state how the affiant reached a particular conclusion in an affidavit; instead, the affiant is permitted to make reasonable inferences and the reviewing judge is also permitted to make their own reasonable

inferences based on the information provided by the affiant. See, e.g., United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000); United States v. Jones, 74 F.4th 941, 949 (8th Cir. 2023); United States v. Brackett, 846 F.3d 987, 992 (8th Cir. 2017). Furthermore, Defendant Lopez's argument improperly focuses on what he believes is absent from the affidavit, but in determining whether probable cause exists to support the issuance of a search warrant, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Daigle, 947 F.3d 1076, 1081 (8th Cir. 2020) (alteration in Daigle); see United States v. Fineday, No. 23-cr-224 (PJS/LIB), 2023 WL 9552042, at *25 n.25 (D. Minn. Dec. 19, 2023), report and recommendation adopted, 2024 WL 209081 (D. Minn. Jan. 19, 2024).

Considering Detective Torgerson's affidavit submitted in support of the application for the Cell Phone Search Warrant, Judge Rosenfeldt could reasonably have concluded that there was a fair probability that evidence of a crime would be found in the contents of the Subject Phone. Put differently, the Court concludes that Judge Rosenfeldt had a sufficient basis upon which to believe that probable cause existed to support the issuance of the Cell Phone Search Warrant authorizing law enforcement to search the contents of the Subject Phone.

As an initial matter, the Court notes that Detective Torgerson attestations in his affidavit provided a sufficient basis upon which Judge Rosenfeldt could reasonably infer that Defendant Lopez was involved in the distribution of methamphetamine.[18] Specifically, Detective Torgerson's affidavit provided the details of law enforcement's investigation into the distribution of methamphetamine by a collective of persons including Defendant Lopez. In addition to all the information detailed above in consideration of Defendant Wiedeman's Motion to Suppress,

---

[18] Notably, Defendant Lopez does not argue that Detective Torgerson's affidavit lacked a sufficient basis upon which Judge Rosenfeldt could reasonably infer that Defendant Lopez was involved in a conspiracy to distribute methamphetamine. (See Def. Lopez's Mot. [Docket No. 85]). Nevertheless, the Court addresses the issue for the sake of completeness.

Detective Torgerson's affidavit also noted that it was Defendant Lopez who picked up the Subject Package containing the suspected methamphetamine from the Delivery Address. Detective Torgerson's affidavit also provided that Defendant Lopez informed law enforcement that after he, Defendant Brinkmann, and Schaffer opened the Subject Package, Defendant Lopez took the GPS device contained therein and drove away from his residence where the Subject Package was located. Based on the information provided in his affidavit, Detective Torgerson reasonably inferred and concluded that Defendant White, Defendant Brinkmann, Schaffer, Defendant Lopez, and Defendant Wiedeman were involved in a conspiracy relating to the distribution of methamphetamine. Judge Rosenfeldt was entitled to rely on this reasonable inference by Detective Torgerson based on his specific assertion of fact and investigative results. This provided a sufficient basis upon which Judge Rosenfeldt could reasonably infer that Defendant Lopez was involved in the distribution of controlled substances.

Detective Torgerson's affidavit also provides a sufficient nexus between the evidence sought and the places to be searched, i.e., the contents of the Subject Phone. Detective Torgerson specifically noted that, based on his training and experience, he knew that individuals involved in the sale and distribution of controlled substances use their cellular phones to communicate with others regarding said sale and distribution. Detective Torgerson also attested that, based on his training and experience, persons involved in the use, sale, and distribution of controlled substances will store information relevant to the use, sale, and distribution of controlled substances on their cellular phones. In determining that there was a fair probability that evidence of a crime would be found in a search of the contents of the Subject Phone, Judge Rosenfeldt was entitled to rely on these assertions by Detective Torgerson based on his training and experience. See, e.g., United States v. Keele, 589 F.3d 940, 944 (8th Cir. 2009) (concluding that the evidence sought "was linked to [defendant's] residence through the experienced opinion of

[the] Agent . . . that drug manufacturers often keep contraband and proceeds at their personal residences"); United States v. Jones, 74 F.4th 941, 949 (8th Cir. 2023), cert. denied, 144 S. Ct. 862 (2024).

Detective Torgerson's attestations based on his training and experience are not, however, the only manner in which Detective Torgerson's affidavit provides a sufficient basis to reasonably conclude that there exists a sufficient nexus between the evidence sought and the contents of the Subject Phone. Detective Torgerson's affidavit also provided that the alleged conspirators in this specific investigation were utilizing cell phones in alleged efforts to distribute methamphetamine.[19] In addition to the affidavit detailing the other alleged co-conspirators' use of cell phones in procuring and distributing controlled substances, the affidavit specifically notes that Defendant Lopez informed law enforcement that Defendant Brinkmann contacted him "via phone" and instructed him to pick up the Subject Package. These assertions provide an additional basis upon which Judge Rosenfeldt could reasonably infer that there was a fair probability that a search of the Subject Phone would result in the discovery of evidence related to the distribution of methamphetamine.

Moreover, Courts have consistently recognized cellular telephones as tools of the drug trade. See e.g., United States v. Eggerson, 999 F.3d 1121, 1127 (8th Cir. 2021); United States v. White, No. 22-cr-207 (JRT/ECW), 2023 WL 5753678, at *19 (D. Minn. June 5, 2023) (collecting cases), report and recommendation adopted, 2023 WL 5558838 (D. Minn. Aug. 29, 2023); United States v. Green, No. 19-cr-103 (MJD/ECW), 2020 WL 5652476, at *8 (D. Minn.

---

[19] Specifically, the affidavit provided that Defendant White had used telephone communications to receive the vacant rental property addresses from Defendant Wiedeman. The affidavit also noted that when law enforcement stopped the blue Ford F-150 driven by Defendant White, the vehicle's passenger, Schaffer, attempted to call the cell phone of Defendant Brinkmann who had just been at Defendant Lopez's residence with her and the Subject Package. At the time she used her cell phone to call Defendant Brinkman, Schaffer was in possession of the suspected methamphetamine which had been in the Subject Package, and it was later discovered that the vehicle Defendant Brinkmann was driving contained bags of suspected methamphetamine.

Sept. 23, 2020); United States v. Oliver, No. 16-cr-258 (DSD/BRT), 2016 WL 11186991, at *8 (D. Minn. Dec. 28, 2016), report and recommendation adopted, 2017 WL 187142 (D. Minn. Jan. 17, 2017), aff'd, 950 F.3d 556 (8th Cir. 2020). Indeed, several Courts have observed that cellular telephones are ubiquitous to the level that they are the primary means of communication for most people. See, e.g., Eggerson, 999 F.3d at 1127; Riley v. California, 573 U.S. 373, 401 (2014). The Eighth Circuit Court of Appeals has specifically noted that "[i]t would be unreasonable and impractical to demand that judges evaluating probable cause must turn a blind eye to the virtual certainty that drug dealers use cell phones." United States v. Eggerson, 999 F.3d 1121, 1127 (8th Cir. 2021).

In summation, the Court finds that Detective Torgerson's affidavit submitted in support of the application for Cell Phone Search Warrant provided a sufficient basis upon which Judge Rosenfeldt could reasonably have concluded that there was a fair probability that evidence of a crime would be found in the search of the Subject Phone. Thus, Detective Torgerson's affidavit submitted in support of the Cell Phone Search Warrant provided a sufficient basis upon which Judge Rosenfeldt could reasonably conclude that probable cause existed to support the issuance of the Cell Phone Search Warrant.

In addition, assuming solely for the sake of argument that the Court were to determine that the affidavit of Detective Torgerson was insufficient to establish probable cause, the Court concludes that officers relied in good faith on the probable cause determination by Judge Rosenfeldt when executing the Cell Phone Search Warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis, 564 U.S. at 238–39 (quoting Leon, 468 U.S. at 922). As discussed

above, there are four circumstances in which the good-faith exception does not apply. See Marion, 238 F.3d at 969.

The consideration of these circumstances as applied to the present case demonstrates that law enforcement's good-faith reliance on the Cell Phone Search Warrant issued by Judge Rosenfeldt militates against suppressing the evidence obtained during the execution of the Cell Phone Search Warrant. For all the reasons discussed above, Detective Torgerson's affidavit in support of the Cell Phone Search Warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Similarly, the Cell Phone Search Warrant was not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Lastly, there is no indication on the record now before the Court that Judge Rosenfeldt was misled by any statement within Detective Torgerson's affidavit nor any indication that Judge Rosenfeldt wholly abandoned her judicial role in issuing the Cell Phone Search Warrant.

Therefore, the undersigned recommends that Defendant Lopez's Motion to Suppress Evidence, [Docket No. 85], be **DENIED**.

## XI.    Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  Defendant Wiedeman's Motion for Compliance with Federal Rule of Criminal Procedure 16, [Docket No. 73], is **GRANTED in part** and **DENIED in part**;

2.  Defendant Wiedeman's Motion to Disclose Evidence that is "Helpful" to the Defense, [Docket No. 76], is **GRANTED**, as set forth herein;

3.  Defendant Lopez's Motion for Discovery and Inspection, [Docket No. 78], is **GRANTED in part** and **DENIED in part**;

4. Defendant Lopez's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, [Docket No. 79], is **GRANTED**, as set forth herein;

5. Defendant Lopez's Motion for Disclosure of Rule 404(b) Evidence, [Docket No. 80], is **GRANTED**, as set forth herein;

6. Defendant Lopez's Motion to Disclose and Make Informant Available for Interview, [Docket No. 81], is **DENIED**;

7. Defendant Lopez's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants, [Docket No. 82], is **DENIED**;

8. Defendant Lopez's Motion for Early Disclosure of Jencks Act Materials, [Docket No. 83], is **DENIED**; and

9. Defendant Lopez's Motion to Sever Defendants, [Docket No. 84], is **DENIED without prejudice**.

Furthermore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant Wiedeman's Motion to Suppress Evidence, [Docket No. 74], be **DENIED**;

2. Defendant Wiedeman's Motion to Suppress Statements, [Docket No. 75], be **DENIED as moot**; and

3. Defendant Lopez's Motion to Suppress Evidence, [Docket No. 85], be **DENIED**.


Dated: September 3, 2024                              s/Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.